We have the cases to be heard in tandem today, two different, the petition for mandamus and an appeal from a denial of an order of the district court. So we'll, we've kind of set the argument time loosely, 10 minutes decide to address both of those matters, but we'll be flexible in the timing and ask you to proceed first on the petition for mandamus and then address the appeal in one sitting since we have the same nucleus of facts. Does that work for you, counsel? Yes, Your Honor. My understanding was that the request for separate argument was denied. I guess I didn't make that quite clear. We're happy to hear anything you'd like to say about the mandamus petition, but we're also happy to take that on submission if you don't feel prepared to address it separately. I'm sorry, we weren't clear about that. Then why don't we go ahead and proceed. May it please the Court, my name is William Pollard. I represent Federal Insurance Company, which is the appellant in the appeal and it is the I'll start with the appeal and I'll come back to mandamus shortly. The issue raised by this appeal is a pleading issue. It is the adequacy of Federal's petition that it has a superior right, title and interest to pay off money paid to the former employee of Federal Subreport. There are four points I'd like to make regarding the appeal. First, I think that Justice Sotomayor's opinion for the Court in Honeycutt and Kokash last term informed how this Court should approach the issues before it. In both those opinions, the Court reined in the government's aggressive positions on forfeiture and disgorgement. I think the government is taking very aggressive positions in both the mandamus issue, the restitution issue and the forfeiture issue and I urge the Court to look very hard at the arguments the government makes and its claim of what the factual record states. Just one example. For the first time on this appeal, the government contends that a state tort statute of limitation controls the ability to assert a constructive trust interest. Now, the government, of course, controls when it will seek forfeiture. So what the government is saying is that it can wait until a state tort statute of limitations has run, if it so chooses, before proceeding with forfeiture, which then, under the government's theory, would preclude a claimant, such as Federal, from asserting its rights. Second, the criminal conduct that underlies both the mandamus and the appeal is that the defendant and his co-defendants hatched a scheme to steal upwards of $45 million from their employer, SEIC, Federal Insurance. The fraud was against the company, only later, was there fraud against New York City, to help fund the money that these defendants were putting into pockets through the padded bills of a patent subcontractor. I understand your position on that, and it seems to me correct as far as it goes, but didn't SEIC, in its deferred prosecution agreement, acknowledge a conspiracy with Bell and Moult that extended throughout the entire period, and then say that that's because they, in effect, enabled the fraud to continue by the overt act and furtherance of the conspiracy that they acknowledge is creating the cost plus, in effect, version of the contract, and thus enabling themselves to make money out of this situation rather than lose money? You have to bifurcate that issue, Judge Lynch. First, there's a fraud against SEIC only, and that extended for a long period of time. If you look at the government's briefs and Denault's appeal, they contend that that fraud didn't start until 2009. Now, the contract that allowed the fraud on the city was amended in 2006, but we really don't know when the fraud on the city actually occurred. Before that, the government finally concedes, it flip-flopped on this issue, but the government finally concedes that the money came solely out of SEIC's pocket. Yeah, but suppose a company finds out that one of its high-level financial officers has been exploiting some kind of glitch in its accounting processes to steal money from the company, hears him say, listen, this same glitch can be used to defraud our customers instead. How about we do that? And then that fraud goes forward. I understand you're going to say that's not the case, but if that were the case, why isn't the company ratifying his acts and exploiting them to join in his criminal conduct? Well, you need to really drill down and see what is the company's involvement. If the company joins, if the company affirmatively joins in its employee's misconduct, that's one thing. We don't have that here. But this man was the project manager. This was a huge project. They appointed him project manager and allowed him to single-source the project. In 2005, a whistleblower called this to their attention. The project went on to 2011. I don't understand how you can say that that period was a long time in relation to the whole project and that he didn't speak on behalf of SEIC during that time. Judge, SEIC in the statement of responsibility admitted two things. It accepted respondent superior responsibility liability for the acts of its employees. It also went on, and we quoted in our brief, to acknowledge that its conduct was negative. Now, the issue here is property rights. The issue on the appeal is property rights defined by state law and control we submit by the opinion in Willis. The issue on the mandamus has to do with Judge Daniels deciding that we're not a worthy victim. And I want to make just two quick points before my time runs out on this. You can take a little extra time. Thank you, Your Honor. Judge Daniels decided we were not a worthy victim. In making those determinations on the mandamus, on the restitution issue, the Court ignored two very important cases, Bascarino and Okajara, this Court's opinion regarding who is a disentitled, who's not victims. The best way to handle that is in a linear fashion. He ignored that. He made the conclusion that, ignored the fact that, you know, the money came out of SEIC's pocket and said just because SEIC made a cumulative profit, therefore the city was the one who funded all this. All that, Judge, ignores critical law that should have been addressed. Why isn't there an unclean problem? The constructive trust is an equitable remedy. So I quite agree with you that in some important way, Willis certainly controls the issue of prior right. This is not a case where the government has the prior right because the proceeds came into being at the time of the mandamus. We also said in Willis that this is going to be a case-by-case thing under equitable principles, and then we have the question of unclean hands. So the same problems that arise with the mandamus in a slightly different form arise in the forfeiture context. Judge Lynch, the equitable consideration is vis-à-vis Dell and his former employer. That's what Willis says. That's what the law says. Now, who has a superior interest and then you look and see whether or not that interest trumps the government's claim. There can be no debate that SEIC and therefore federal subsidiary has the superior interest vis-à-vis Dell. The whole thing about the fraud on the city, Judge, again, go back and look at what was the purpose of the scheme. The purpose of the scheme was for these defendants to steal money from SEIC. But then it changed. Then it became stealing money on behalf of SEIC and for themselves as well. What if you join the conspiracy at that point? This is not the case, it seems to me, where SEIC is victimized. Dell embezzles a bunch of money, and then separately Dell participates in some completely separate scheme on behalf of the company against some other victim. This is a case where the bribe-taking transmogrifies partway through from being something that benefits only Dell and Denault and a few other selected people into one that benefits the company. The company accepts responsibility because its failures contributed to the ability of Denault and Dell to commit their crimes against the city, and the city was defrauded by SEIC as a result, is what they say. That's exactly what they said. But if you look at what the reality is, we had two rogue employees. The negligence of SEIC contributed to their ability to defraud the city. At the same time, they were defrauding their employer out of millions and millions of dollars at stake. But it seems to me the same argument could be made. The argument you're making would also say SEIC is entitled to recover whatever bribes were paid to Teledyne, to Denault and Dell during the second phase of the conspiracy as well. What would be the difference? Well, here's the difference. This goes back to Judge Easterbrook's opinion. Judge Easterbrook said that the direct victim is responsible for restitution to the indirect victim. The direct victim should get restitution. And then as between the indirect victim and the direct victim, they sort it out through normal principles of contract and common law. That is, as we argue in our brief, that's the best way to do this, because you start to get into a lot of collateral issues if you try to parse out for restitution purposes, you know, who's worthy and who's not worthy. Judge Easterbrook had an exceptional— There's an issue of whether you're a victim at all. The government concedes we're a victim. The government concedes we're a victim. There are three counts in that information that are directed solely at SEIC. Counts two, three, and four. Two honest services— No, but you, that is to say the insurer, is not a victim under the Mandatory Victim Restitution Act. But we hold—yes, we're not defined as a victim, but a couple of things. But if you're not a victim, and then is the question you're an authorized, what is it, a lawful representative? We're aware of that. There's a letter that SEIC submitted in which they acknowledged they had transferred all rights, including standing rights, to pursue recovery to federal. We also argue that under the segregation principles, we hold all of SEIC's rights. But wouldn't that undo what we said in, what's the name of the case, Thompson, I think, about the inability of people who reimburse victims to obtain restitution under the MVRA? But you have separate principles here. There's a transfer of rights, and transfer of rights is recognized in the statute itself. Looking at the clause you just referred to, you know, we clearly are that. Look at that letter— You're not acting on behalf of SEIC. You're in this for yourself. You're trying to get $15 million only. You're not pursuing the rights of SEIC in the abstract to whatever SEIC is entitled to. You're only pursuing your own interests. But Judge Lynch, our own interests is a reflection of SEIC's rights. All we have is the right to get what SEIC is entitled to, and that's what we're seeking. And on that point, this is one of the two final points I want to make on that is, when you start looking at this issue, you need to bear in mind that there has to be consistent application of property rights because you have insurance companies, not just federal, you have many insurance companies who have written death policies. And if there's coverage under the policy because the property of the insured was stolen through kickbacks, and the insurers are going to be paying millions and millions of dollars under common law and contract principles because that's their contractual obligation, and then they turn around and they say, okay, we are entitled one way or the other to get that money back from the defendants who took those bribes. If there's going to be law that says, no, that's not necessarily the case. You're going to be putting carriers in a bind. If there's no property rights under federal law, but there are property rights under state law, it's really unfair to the carriers. We're going to incentivize insurers to deny coverage, among other things. But that may not be, first of all, that may not be possible. I understand. And second, that, you know, the insurance carriers in the business of writing coverage can protect their clients. So what I'm saying is there needs to be that consistency. And I keep harping on this. Judge Easterbrook's opinion really addresses that. The last thing I want to say, and thank you for the generous extra time. If you reverse, we ask that you send it back to another judge. It's rare that that happens. But I think anyone who looks at the record of Judge Daniels, who's a good judge and a good person, but if you look at the record, Judge Daniels has made up his mind that we're unworthy victims, we're unworthy to rights, you know, to assert constructive trust. And no matter what we say, no matter what the facts, no matter what the law, if it goes back to him, the government's going to get what it wants. And if it goes back to him, you know, he's going to be in a position that he now has to look at something again where he's taking very firm, in my view, inflexible views on what is the right way. And he's going to have to now square that with whatever you say if you send it back. And I'm not presupposing that you are. But if you send it back, I think it is fair for Judge Daniels. It's fair for the government. It's fair for federal. It's someone who doesn't have a vested interest in the two decisions he wrote. And how he wrote them. That somebody who doesn't have that vested interest should take a look at this and make rulings. Let me ask you one thing before you sit down. You were charged, your client, not your client, SCFC was charged in the information with one count of wire fraud. Why wasn't your deferred prosecution an effective plea to wire fraud, making you a co-conspirator? Well, it can't be. Because there's no conviction. So it can't be that. It cannot be. It cannot be because there was no conviction. You can only have a conviction. You can only have the consequences that you're suggesting, Judge Parker, if there was conviction. But what it did was there was a statement of responsibility. And this will make this observation. Judge Carney, you noted that the information starts in 2003. But if you look at the statement of responsibility, there's nothing in there that says our misconduct started in 2003. Because in 2003, the only victim was SCFC. They accept responsibility for the conduct during the course of the misconduct of Denault and Dell during the course of the city time project. Doesn't that cover the entire? They don't make an exception for some piece of the misconduct of Denault and Dell during the city time project. What was the misconduct before the fraud against the city started sometime between 2006 and 2009? Government concedes that SAIC was the victim before that misconduct started. When you say the government concedes that, you're saying by charging on a services fraud? Yes. And conceding that we were a victim of those crimes. Where exactly is the concession that SAIC was a victim? It's, we can give you, I can look at it. We'll give you the record citation in just a moment. It's in our brief. You know, the, the, the, but they can, that is the only, that is a fact that cannot be disputed. You're saying that the information charges honest services fraud and the people to whom the honest services were due was SAIC. Therefore, SAIC is the only available victim of account for Denault and Dell defrauding some of their employer with SAIC of honest and faithful service. Absolutely. Until, until the fraud. The information charged wire fraud. Yes. Not honest services. I thought Judge Lentz was talking about counts. The counts that you are referring to. There are other counts though. The other part of your problem is there are other counts in the same indictment that charge broader misconduct. Let me just go through it. Count, count one in Bell's information, charges of fraud against New York City. That's all the charges, fraud against New York City. And if you look at the record, you know, that was what was proven, particularly if you look at how the government described that in their brief on Denault's appeal. Counts two and three charge honest services fraud and conspiracy in which only SAIC is the victim. But at the same time, count one in the information that SAIC allowed to be filed in connection with the DPA charges that from at least in or about 2003 through 2010, they knowingly, willfully and knowingly conspired to commit wire fraud. That is the charge. No doubt about that. That is the charge. But the facts, the facts are that there was no fraud involving the city until sometime after 2005, sometime between 2006 and 2009. There was no fraud against it. The only victim during that period was SAIC. And SAIC continued to be a victim under counts two, two, three, and four. 2003 through 2009? We don't know exactly when the fraud on. Why wasn't it at least 2006 when the costs shift to having the city bear it? That's when the contract changed. But again, it's in our brief. If you go and you look at two things. If you look at how the government defended the conviction in this court of Denault, the evidence they relied upon was evidence that began in 2009. But that's Denault. We're dealing here with a completely different record where we have only a guilty plea involving Bell and only a DPA involving SAIC. Well, the fact that they chose certain strategies in emphasizing certain evidence in defending a sufficiency claim or something vis-a-vis Denault, you know, it's hard for me to see how that limits what happened in this case that we're involved in. Denault was the driver of this fraud. Bell was on for the ride. Yes, and Bell got a lot of money out of it. Denault was the driver on it. But coming back to what you're saying, focusing on this year, 2003, you just want to look at the record that we have, you know, which is the Statement of Responsibility. And you parse it out. There's nothing in that record that says that there was any fraud on the city before Amendment 6 came along in 2006. And we don't know when the fraud on the city started after that. It's the same. I understand. It's the same fraud all the way through. Denault and Bell are taking bribes from Technodyne or whatever. But the money only came out of SIC's pocket. I understand that. But then when you say nothing, we don't know whether anything started until 2009. Technodyne is getting this contract all along. They're still the single source payer. They're still getting that by paying off Denault and Bell. So why do you say nothing until 2009? Because all of that is, well, we don't know when it started. Sometime in 2008. Started in 2003. And the same thing continues all the way through. There's no reason to think they stopped paying bribes in 2006. They pay from 2003 to 2006. Then they start up again in 2009. No, no, Judge. No, no, no. What I'm trying to differentiate is against whom were Bells and Denault's crimes. You don't need to worry about 2006 to 2009 for that purpose. I understand your point concerns the 2003 to 2006 period. So I think you're taking on a little more than you need to by arguing about what went on from 2006 to 2009. But the point I'm trying to make is exactly what you're saying, is that there is a period of time, a significant period of time. And we calculated, I think, something like $4 million in bribe money. But it is a significant period of time when only SAIC was the victim of these defendants' crimes, for both restitution purposes and also for forfeiture purposes. Before you sit down, I want to ask one technical question about mandamus. How can that go forward without Mr. Bell? Mr. Bell is not a party to that mandamus proceeding. And he's the one that you're seeking restitution against. You're seeking to reopen his sentence and get him to pay additional restitution that would change his situation. We served the papers on Mr. Bell. Okay, so the caption is just wrong. I don't, I don't, well, I can't, I can't speak to that caption just wrong. I do know that when this came up, I directed that the papers be served on Mr. Bell. The mandamus petition is served on Mr. Bell. I directed that they be served on Mr. Bell. So if he's not here, it's his choice. Yes, sir. And I will verify that when I get back to my office, if that in fact did happen. I have one question for you also on mandamus. Is your petition, is your position that there is no time limit on the filing of mandamus petition in connection with restitution? No, no, no. Position is what the Supreme Court announced, that latches, and latches also shows, has to show prejudice. How would we judge that? I mean, 105 days, I guess, elapsed between the denial of the order. And even if we were to agree with you that the 14 days referred to in 3771 doesn't apply, what are we to use here? You had all the information that was necessary to make your mandamus petition, you know, back at the time that you moved for relief in the district court. Well, first the form, and we do have, you know, the need to reopen or adjust a sentence, which seems there's a strong interest in finality there. So what should we be considering? First, if you look at the statute that the government relies upon. I'm looking at it. It can only, in our opinion, be interpreted as a remedy when the district court  Because that is the predicate. You denied the right to be heard at plea or sentence. That's not this case. It doesn't apply under the plain language. And then you have an independent paragraph saying this doesn't apply to the right to restitution. But the key question that you're asking is, how does the court control? And there are two answers to that. You have your power on latches. You can look at the totality of the circumstances. You agree still that the mandamus mechanism is how to enforce the right to restitution that's set out in 3771. Is that right? It is. Yes, it is. It is a right. It is right to enforce. It's right. It is a procedure to allow a remedy when the victim has not gotten restitution. So you think it's a vaguely kind of equitable determination about whether this was promptly enough? No, those two latches. And latches has a prejudice issue. Why is it Mr. Bell prejudiced? This goes back to my question. I can see why the government isn't prejudiced. And that's an argument that you make. If you get restitution from Bell, what difference does it make to the government? And what difference does it make when that's eventually ordered? But you are asking for an additional sentence to be imposed on Mr. Bell. If the government came back 105 days after a sentence is finalized and says, oh, we forgot to ask for a special assessment, or we forgot, we really wanted some extra conditions on the supervised release. We wanted more jail time. They would be thrown out of court, right? Well, first, the government has a right to take a direct appeal. And as we point out in our brief, it would have, as a matter of right, a minimum of 135 days to perfect its appeal on that. Bell's judgment proof except for what's going to be forfeited. So it's a practical matter. The restitution is sort of moot anyway. It's really the forfeiture that you're interested in because that's the assets that are on the table. No, I'm interested in both because what we asked and what we argued in this court is that restitution should take precedence over forfeiture. And Judge Garifuss wrote some very good opinions. That's another way of getting at the forfeiture. Yes, but at the end of the day, it's a zero-sum game. But I want to go back to your question, Judge Garifuss, about the 105 days. Again, it's a latches analysis. What happened? First, no one ever told us that this opinion, a third opinion, had been filed. Ms. Gross filed it because she was monitoring the docket. That's what she's supposed to be doing or somebody's supposed to be doing it. I understand that. But nobody, we're not, we can't get electronic notice. Nobody told us about this, which affected our rights. Second, I was in the beginning stages of 11, 12-week jury trial before Judge Roman up in White Plains. I went back and I looked and we came in and I filed this thing, I believe it was on Saturday, because we had a 30-day time limit. You know, we're not signed off, but 1030 at night. You know, I was working on a trial. The trial went longer than we expected. You know, we did a family vacation event plan that had to be postponed. You know, looking at the totality of the situation, which the government really doesn't contest, if you look at their brief, looking at the totality of the circumstances, particularly if the government would have 135 days to perfect an appeal, we submit that our petition is timely under any laches analysis. Okay. And that's also your answer, in effect, to the question of prejudice against Bell is that since the government could have pursued additional restitution during this time, he's no worse off that you took advantage of a similar amendment. He's no worse off. I mean, the reality is, the reality is we got this petition in as quickly as it did. And the reality also is, as you said, it's a zero-sum game between you and the government at the end of the day, because as a practical matter, the question is, there are some forfeited assets. And if you can get at them either via an argument that you have a prior entitlement to them or via a restitution award that takes precedence over the forfeiture, you get money rather than the government. And Bell really isn't the player. And Bell, like I said, he's directly proof on that. All right. Thank you very much. And thank you for the additional time you're on this. Sure. And we'll hear from the government, please. May it please the Court. My name is Jacob Warren. I'm an Assistant United States Attorney in the Southern District of New York. And I represent the United States in this appeal. I'd like to start with what the Federalist Council spent a lot of time on, which is the distinction between the fixed-price contract, which was pre-2006. Before you get to that, let me ask you this. I don't understand why this subsection 5D applies at all. In under the CVRA, Your Honor? Yeah. So I think the courts that have interpreted that provision have— Before we get to that, let's just look at the language of the statute. It seems to me that under section—I have trouble figuring out exactly what Congress had in mind here—but it seems to me that this is an exceptionally narrow statute that simply provides a remedy when someone comes forward and says, look, Judge, I have an interest in this proceeding. I have an interest in this property that's going to be forfeited or whatever. And I'd like to be heard. And the statute, as I read it, only applies when that right is denied. Yes, Your Honor. I think that— When the right to be heard is denied. So once I'm heard, it doesn't seem to me this statute touches me at all. I think, Your Honor, that Federal, in fact, has been denied a right to be heard because their claim for restitution was denied by Judge Daniels. I don't think that's an argument the government really wants to make as a general matter, that if somebody doesn't get what they want from a judge, then their right to be heard has been denied. I don't think you're going to want to be saying that in many cases. What's your next argument? That's a non-starter. Well, Your Honor, I think that for—I think the answer is this must apply to a claim for now where— Why doesn't this Congress say this paragraph does not affect the victim's right to restitution? I mean, this whole section, apart from—I mean, you know, I'm inclined to agree with Judge Parker. On the other hand, what I mostly agree with him about is I can't make any sense out of this at all. But the one thing that seems clear is this has nothing to do with restitution. You know, because if it's only about the right to be heard, then you have the problem about what about these other six rights that are in the section that it applies to? But the one thing that seems very clear doesn't affect restitution. Why don't we just move out of that section then? So I think this—courts that have interpreted this particular provision have said that it doesn't affect the underlying substantive right to restitution. That right to restitution is found in the MVRA. Courts have said that there's not an independent right to restitution in the CVRA. And as I think was noted earlier, the effect is opening up a criminal defendant's judgment now more than 15 months after it's become final because the restitution is a part— But what about Mr. Pollard's argument that you could have appealed and sought more restitution if you wanted to in a sentence during this—even during this extended period of delay? Yes, Your Honor. And the government can appeal a criminal defendant's sentence. But I think that courts have said that the CVRA, the principles of finality, animate the concerns of the CVRA and the tight timelines that would allow a victim to petition for a mandamus to— It's your position that this 5D knocks federal out of court? Yes, Your Honor. Right?  So let me ask you this. I don't—I mean, it seems to—we've covered this right to be denied. When does the 14 days run from? Does it run from the time when the right to be heard was denied? Does it run from sentencing? Does it run from the signature on the judgment of conviction? Does it run from the docketing? When does it run from? Here it would run from when the sentence was final, when the judge entered the—on May 13th when Judge Daniels denied their claim for restitution. That's after the sentence took place, right? I mean, in the case, this was a deferred restitution discussion. Correct. Judge Daniels held open the issue of restitution. So if you weren't in court that day, how would you know when your time—your 14-day time to file for mandamus started? Well, I think that federal had been in court. They had— If they had? I think that if federal hadn't—if a victim hadn't been in court—well, I think for a victim, the government would have an obligation to notify them of the proceedings under the MVRA. And I think here on the facts, federal was in court. They had litigated this issue before Judge Daniels. They had filed multiple letters— Can you figure out how this statute that none of us—that we're all having sort of difficulty parsing is supposed to work? So what—if the purpose of this statute is to vindicate a right to be heard, why wouldn't the 14 days run from the time the judge said, look, I've entertained your—I've read your motion to be heard, denied? And I think here that date was the May 3rd. Now, this is a hypothetical. I'm trying to understand the statute. So let's say the event that I just rehearsed occurred and the statute was—I mean, the application was—to be heard was denied. Why wouldn't the 14 days run from that? I think in—under that hypothetical, I think in a lot of cases, it would run from that. For example— Sometimes it runs from the denial, okay? And then sometimes the government's position is it runs from the date of the sentencing. Correct. And I think it— You know, they can always be—I mean, for certain purposes, that's the final date, right? And I think that— Well, the government's position is that this 14 days floats. It could be here. It could be there. It could be there, right? Correct. So it floats. I mean, that is—that's an awful regime, it seems to me, to inflict on anybody. Well, in fairness, isn't it an awful regime in general? If you look at D3, maybe I should have asked Mr. Pollard this rather than you, but how does this—how does that section that allows mandamus work in the case of restitution? It seems very odd. All of these—the mandamus is supposed to happen right away, and then this court would have to decide within 72 hours the kind of issue that, in generally talking about restitution, for the—as far as the district court is concerned, the district court gets lots of extra time, even past sentencing, to sort out the thorny issues. But if mandamus—if restitution is denied to a victim, then the remedy is not an appeal in the normal course as the government would seek for restitution, but is mandamus on such a short leash for this court that all of those issues have to be decided separately. I begin to wonder whether this whole mandamus regime is sensible as applied to restitution, not just the limitation on time, the statute of limitations period. On the other hand, why don't you get to the merits? I mean, you've been talking about all these— I have one—I have a pre-merit question. Subsection C says, in the case of a plea, the accused has not pled to the highest offense charge. So let's say the charging instrument only has one count. Does that mean this statute just doesn't apply? I think if the one count is the—if that is the highest offense charge— It's the only count. So by definition, it's the highest one applied. So if there's one count, this statute doesn't even apply at all? I think it would depend on the facts of that— Isn't your answer that this whole 5 applies to a motion to reopen a plea or sentence, and so sub C could only have application when the effort is to reopen a plea, and there wouldn't be any reason for a victim to want to reopen a plea if the defendant has pled to the highest and only offense charge? Correct, Your Honor. He'd only be wanting to reopen the sentence. Now that's also a drafting glitch, because it certainly sounds like that is a requirement whenever you are opening a plea or a sentence, but I think that's one we can probably manage. But this is all admittedly a mess. There's a sentence in here that says it doesn't apply to restitution at all. We have like 15 technicalities where the government is trying to get around Mr. Pollard's basic argument. Why don't we talk about what's wrong with his argument, if anything, with respect to whether SAIC has unclean hands and whether that extends to federal? Yes, and amplifying that, if I may. Why, especially during the period before the 2006 amendment took place, where there was just kickbacks coming, and it looks like money was being paid by SAIC that, under common law principles, should have... It was overpaying, basically, to Technodyne, and its employees were collecting money that would otherwise do it. Why it's not sufficiently a victim during that period to have a reasonable prior claim to entitlement to the forfeited funds. So the statement of facts focuses on SAIC's own independent criminal conduct, and I think the trial also... Sorry, what statement of facts?  I'm not sure it does. As I read the statement of responsibility, what it basically says, my takeaway is that there were red flags, perhaps conspicuous red flags, and we, SAIC, was not sufficiently diligent in responding to the red flags and doing follow-up investigation after they were... There's nothing in there about entering... There's nothing in there about having an awareness of a conspiracy or joining it. I think that the statement... There are portions of the statements of facts where... And I can just read through some of those portions, and also from the trial transcript, where... Let's stick with the statement of responsibility, because that's the operative document from my perspective. SAIC's managers failed to perceive or ignored that denial through intimidation and threats of retaliation or termination created a hostile atmosphere in SAIC's New York office, in which employees were afraid to confront him or bring their ethical or legal concerns to his supervisors. In those instances in which SAIC... Criminal behavior. I think it's a willful blindness towards criminal behavior. And the statement of facts says, in those instances in which SAIC employees on the project expressed concerns to Denault's supervisors about the possibility that he had a corrupt relationship with Technodyne, and this came out at the trial transcript, which we noted in our brief in 2005, a specific ethics complaint was made that Denault was accepting kickbacks. And... And the company's response to that is not to investigate it, either to protect themselves, even to protect the company itself against this kind of conduct, but is instead to join in, to allow Denault's plan to go forward to shift the costs of everything that's going on to the city. Correct. And I also think the distinction between the fixed price contract and label of effort contract, this is cited in SAIC's brief, it came out at trial. Even under the fixed price contract, pre-2006, SAIC's costs, Technodyne's costs were still factored in to the price of the contract. There's... There's testimony that even during the fixed price contract, even pre-2006, and this is it, trial transcript 741, which we cite in our brief. So under that SAIC pricing... I mean, are you saying that all of the inflated costs were passed along? I mean, isn't it the typical situation where an employee is taking a bribe, that the employer has a legitimate claim to that bribe as its own money? In fact, SAIC was first paying all of that, and then subject to the fixed price limitation, it was billing the city. But... So isn't it reasonable to construe SAIC as maybe having suffered a loss during that time? Maybe they had suffered some amount of loss during that time, but the city was also still paying under the fixed price contract, which incorporated... During the prior time. I'm sorry, when are you saying that SAIC suffered a loss? During what time period? Pre-2006. Pre-2006. Correct. And then in... From 2006 on, you're saying there is no further loss to SAIC. Correct. Is there some way in which SAIC is enabled to recover? I mean, this isn't a retroactive cost-plus contract, is it, or is it, that enables SAIC to recover for expenditures that were made between 2003 and 2006? So even, and this is from the criminal information too, the fraud on the city started in 2003, and the government's position is that even the one way that SAIC could hold title to the kickback payments would be through a constructive trust, and they can't establish a constructive trust given the conduct starting in 2003 here. But doesn't, wait, why not? Starting in 2003, they can't establish a constructive trust, why? Because they were a co-conspirator in the fraud on the city. Don't they become a co-conspirator? They didn't get to be a co-conspirator. They didn't admit to conspiring in the statement of responsibility. This was a, help me if I've misread it. The, I mean, here, I think, on the facts, the head of SAIC's New York office negotiated from the start, from 2003, the reason they brought on Technodyne to the project. So, they're stuck, and our analysis of whether they can get anything starts with the statement of responsibility, because we know if they're a co-conspirator, they can't. They probably can't. But I don't get that from reading the statement of responsibility. I get, you know, negligence, and maybe gross negligence, but they're different. By the way, how can a company be a co-conspirator with some employees? Isn't that not a concept? In other words, if an employee of a company engages in criminal conduct, by responding out superior, the company is liable for that conduct, period, end of story. They're not guilty of some separate crime of conspiring with that employee, are they? Correct, your honor. So, this notion of co-conspirator is probably the wrong rubric to think about in the first place. The reason they're responsible, and this is not a case of the company being liable by responding out superior for the acts of the night watchman. This is a very high-level official who engages in this conduct. Now, the problem is, some of the conduct is directed at the company, and the company is victimized by. Other aspects of it turn into a fraud that profits the company, conducted by a high-level official. And the question is, I suppose, in my mind, whether once that shift happens, the company becomes responsible for all of the behavior, because now it's profiting from this ability of Denault to decide to turn the company from a victim into a beneficiary of his bribery schemes. Correct, your honor. And the negotiation for Amendment 6, Denault started that back in 2004. So, it's hard to separate. I ask you a lot of things. What is correct? Judge Lentz asked you a question, and you said correct. Are you, I'm sorry, I just didn't follow the answer. And I apologize, maybe I didn't. You're saying it's correct that they're not a co-conspirator now, but that they are something else. They're directly liable for the conduct of Denault. Were they ever considered a co-conspirator with TechnoDyn? Well, certainly, certainly Denault and Bell were. And I think that there are facts in the trial transcript that SAIC's own managerial failure started before 2006. Could I ask another sort of question about the peculiarities in this case? I understand why you don't want SAIC to be able to come in and get restitution or get something else, since they're really the bad guy in this. The problem is, they already got reimbursed this $15 million, right? Correct. So, nothing that happens here today is going to help or hurt SAIC? Correct. So, what's the problem with federal? What did they do wrong that they can't recover? Well, one, the government's decision is that it has a superior right and interest in the Yeah, well, it doesn't under Willis, so skip that. What you're really saying is they have unclean hands or their sub-roguee, their insured has unclean hands. Correct. Federal has unclean hands standing in SAIC's shoes. And so, what is this? Should they not have paid the claim? I think Is that the government's position? It's hard to, we've never had the full insurance policy, but I think the ultimate answer is yes, because SAIC ultimately had unclean hands. The only How can you say yes to that if you've never read the policy? That's a fair point, Your Honor. But I think that ultimately, what we do know is, is that SAIC had unclean hands and that under applicable state law, the only way they could hold title to the kickback payment is through a constructive trust. But what do we want? Well, that's the title question that's more complicated, but it still goes to this question of what is the underlying policy here? I don't mean the insurance policy. What are we supposed to all be doing here? Is the idea that in a case like this, an insurer should say, we should have to decide whether it's insured, somehow played some kind of role in an overarching crime, and therefore, to the extent that a claim has been submitted saying this employee stole from us, what the insurance company and let's assume the policy simply says, if the employee steals from you, we'll pay you for that. They're supposed to say, no, wait, you have unclean hands, and therefore, we shouldn't, we don't have to pay that claim? Or do they have to pay the claim, but then they're stuck. They've paid the claim, but they don't have any rights against anybody to recover against the thief in the first place. I think there would be a factual analysis for the insurer in cases like this one that when you have a case where very senior employees orchestrated the fraud and then management turned a blind eye, that would be a situation where there's unclean hands, and you wouldn't pay out the policy. And this is very different from the facts in Willis where you have just an embezzlement of the own, of that company's money. So I think there would be that type of factual analysis in determining whether or not to pay out a claim. I wonder if, under 853, the third party interest that Mr. Pollard's trying to assert on behalf of the insurer, the provisions under N seem to call for the district court to hold a hearing to adjudicate the validity of the claim, whether it's a prior right and so on, and possible defenses. The district court here dismissed the claim just with reference to his restitution decision and said, you're out of here. I was concerned about that in light of the obligation this seems to place on the district court to entertain or to look for standing, assess it as you would on a 12B6 motion, but at the same time to give the claimant an opportunity to make a factual presentation. What if the district court had held a hearing and the insurance company was able to show that this was really negligence, there was no evidence to support a finding of recklessness or certain of any intentionality, particularly with respect to the period between 2003 and 2006, you know, doesn't it have possibly a legitimate claim under 853, and wasn't the district court in error in feeling to at least give federal a chance to support that claim? Even if you set aside the significant amount of briefs and the argument that was held on the NBRA issue and the restitution issue and Judge Daniels, the colloquy between Judge There's nothing in federal's petition that would establish that the pre-2006 kickback payments could be traced to the specific properties, which is crucial for them to establish a right in those properties. I think all courts that have looked at the specific, the tracing issue have said that it's not enough for federal to say that they have a general claim against Bell for damages. To establish a constructive trust, they have to show, they have to trace the stolen money to the assets that they claim they have a constructive trust over. And if you, correct, and if you look at the record. Who decided that a constructive trust won't go on? Has that been adjudicated? I apologize, I didn't hear the question. Has it been adjudicated that there's no possibility of a constructive trust? I think it has been adjudicated there's no possibility of constructive trust. Did Judge Daniels rule to that effect? He ruled for the reason stated in the government's brief, which one of those issues was SSE's role in the fraud. And I think another is this tracing analysis, which if you look at, if you look at the record. But the reason stated in the government's brief doesn't, I mean, that's a pretty bold shortcut. I mean, these are, these are hard issues. I mean, they're hard for you. They're hard for us. And, and I don't know whether a constructive, whether a constructive trust is, is a possibility here. And, you know, for the reason stated in the government's brief, it seems to me is not a, is not a substitute for some sort of careful analysis. I think this court some years ago came down rather hard on district judges who denied habeas petitions that way, saying for the reason stated in the government's brief, when the government had said many different things in their brief. Understood. I mean, I think that for, just to go back briefly to the tracing analysis, if you, if you look at the record, the majority, more than five of the more than $5 million in bribes paid to Bell, more than 4.1 million came from 2006 on. And there's just no facts in federal petition that this relatively small amount of kickback payments from pre-2006 funded the specific properties. There's, there's no facts. And they're just basically no more than a general creditor to the extent there's a claim at all. Correct. And, and, and this court has said that basically that would turn a forfeiture proceeding into a bankruptcy proceeding. Well, this is a rather simple case by comparison in terms of the, the tracing. You know, and you could imagine hypothesized even simpler cases where money comes into the, the bad guy's hands and it's still there in effect when the, when the cops come. This is a more complicated case, but why don't they get a chance to demonstrate that if they can? In their petition, they only cite the forfeiture order in count one of the forfeiture order claims a fraud on the conspiracy, a fraud on the city from 2003 to 2011. So just, there's no facts in the petition that allege that the specific properties are funded by pre-2006 kickback payments. Okay. The petition was just deficient on its face. Correct. The district court didn't have. So is, is federal bills lawful representative? No, Your Honor. Why? I think that courts who have analyzed that term lawful representative. And I think this is the case we cite in Turner. There was an in-depth analysis of lawful representative in Turner and the congressional intent behind that term lawful representative. And the court there said the provision is phrased in exclusive terms, only the victim or the victim's lawful representative to avoid any suggestion that other potentially intermeddling persons have the right to be heard in criminal proceedings. And to avoid the suggestion that the accused or convicted offender. A lawful representative would be somebody like a guardian or someone, if a victim, say you have a rape victim in a case and the rape victim doesn't want to be spending all of his or her time in court. And the rape victim says, I want my father to come in and assert my rights, including the rights to be heard and all those other things, but also a right to restitution on my behalf. And the father isn't a lawyer. So it's sort of an appointed attorney, in fact, to advance the interests of the victim, not necessarily someone who has acquired those rights, who bought those rights from the victim and then comes in and is asserting its own interest for its own sake to recover money up to the limits of how much it paid in the policy or whatever, not looking out for the victim herself or itself. Is that the idea? Yes. In the court. Let's say the defendant takes a position that, look, not the defendant, someone says, I'm just tired of all of this. I don't want to go back to court anymore. I don't want to be involved in these proceedings. It's too stressful. It's too embarrassing. Let me go to litigation funding and have them do this for me. I can't bear it anymore. And I'm going to have an arrangement with them where they pursue this claim for me. And then I go to Cravath to draft the contract with litigation funding. Do they get to stay in court? Well, I think it sounds like in that scenario, they would be hiring counsel to represent them. Let's say no counsel. The only thing counsel does is draft a contract. So it's a valid conveyance, at least under contract principles. So there's no question about that. But litigation funding wants to send people in who are not lawyers to pursue this claim. And that sounds like the position of a third party that a third party payer is normally in. Can you do it? I think that under, is a third party payer in that situation a lawful representative? Well, are you going to maybe distinguish between a situation where the third party is coming in to pursue a maximum recovery, some portion of which will go to it, but some portion of which will still go to the victim, or a situation in which the claim has been sold to a third party who is only going to pursue its own interest in recovering money? Right. And in that case, they wouldn't be looking out solely for the interests of the victim. And Turner says, in all circumstances involving... What about a contingency? A contingency where the... If you, if I recover a buck, I get to keep 25 cents. In that situation, could the holder of the contingency be a lawful... Yes. They'd be just like a lawyer then, right? That sounds like a situation where it would be just like a lawyer and might could be under the facts a lawful representative. But I think here to get back to your question about whether... I still understand your position as to why it's federal, it's not a lawful representative. Because I think, as the court noted, in all circumstances involving a representative, care must be taken to ensure that the representative truly reflects the interests and only interests of the victim. The court can make an inquiry about that since, as your answer has suggested, this is a fact-intensive inquiry. We know none of this money is going to go to SAIC. Money has already gone to SAIC. Correct. None of this money is going to go to SAIC. Does the DPA in any respect prevent that kind of relationship between the two, insofar as SAIC commits not to aiding any third party in promoting any further claims? I think the DPA does reference that SAIC will not make any claims to the money that it forfeited as far as the DPA or aid any other party in pursuing those funds. I think we made that argument at the district court and... But that's the money that it forfeited. Correct. I didn't say anything about the money that Bell forfeited or the money that Denault forfeited. Correct. Could an assignee for the benefit of creditors be a lawful representative? Could an assignee for the benefit of creditors... It seems like it would depend on the relationship between... Assignee for the benefit of creditors. That's the relationship. Bell makes an assignment for the benefit of creditors. Could that individual be a lawful representative?  Just to clarify, we mean SAIC, not Bell, right? Are you answering on the assumption that Bell is somehow making this assignment, or are you answering on the assumption that we're talking about SAIC as the victim? SAIC as the victim. I think the term, at least as courts have interpreted the term lawful representative, the congressional intent seems like it was that of an attorney or as a relationship described earlier where you have a guardian type scenario and not purely a commercial interest. What's the basis for that distinction? I think the basis for that distinction is how that has been the language adding a lawful representative to someone who can represent a victim's rights. It's someone representing the victim, not... Correct. Someone acting on its own behalf with using rights derived from the victim. Correct. So you're saying that the almost plain language tells you it has to be someone representing the victim and therefore the victim's interests? Yes, correct. We've kept you well past your time. If you would like to make a closing remark or two, then we'll turn to Mr. Pollard's rebuttal. I think that considering all the questions, I don't think I have any closing remarks. Thank you. Very good. Thanks very much, Mr. Pollard. You've preserved a few minutes in rebuttal. Let me start with the issue of unclean hands. We described what the unclean hands defense has to be. It's never been pled. It's factual. It has to be proven. And they can't prove it. If you go and you look at our brief on page 32, you know, we describe that the doctrine applies if the alleged inequitable condom involves the substance of the immediate dispute and the injured party is the adverse party in the immediate dispute. You don't have that here. You don't have it. You know, the unclean hands might arise between SAIC and the city, but not here. The government does never address, the government did not respond to that in their opposition papers. Judge Lynch, you were talking about, you know, SAIC's criminal responsibility, these are the bevels and all. Yeah, absolutely true. They cannot conspire with their own employees. You know, they cannot conspire to steal from themselves. You know, they conceded the other victims in counts two and three, but the government concedes that. And we make reference to that on page 15 of our mandamus brief. And we cite the record on that, on that page where they concede we're the victim. They also concede that, you know, the money prior to the fraud on the city came out of SAIC's pocket. They concede that. If we're going to talk about who's pleading what, could you address the argument that you didn't really plead a constructive trust in the, or fact sufficient to establish a constructive trust in the petition for, under the forfeiture? There are two responses to that. First of all, constructive trust is a remedy. You don't have to plead a remedy. The governance papers acknowledge it's a remedy. Second, if you look at the allegations. Well, but you have to plead your interest in the property. I'm getting there. I'm getting there. If you look at the pleadings, particularly between paragraphs 10 and 20, we plead that the money derived from SAIC's payment to the subcontractors and went then to Bell. So we've alleged that there's a linear link between it. We have to prove it, yeah. We have to prove it. But it's there. We allege two theories. We allege that the money is traceable back to the kickbacks themselves. We allege that the money is traceable back to the payments, the inflated invoices to the subcontractor. It's a factual question to prove it. Now, one of the other things we have is we have the stipulations in the consent order of forfeiture where the government has made a judicial admission. This money is traceable back. So these are issues just to be formed. Let me go back to some of the bribes that are part of the scheme charged against Bell. It doesn't say which ones, but I see where you're going with this. It should be sorted out by— Actually, I need a little more explanation. I mean, traceable, we have fungible money. Right. Bribes are paid. Right. How is it traceable back to the money forfeited? Well, you've mentioned, but we didn't discover here. You know, there is—we know where—we know how the money transfers. We haven't had discovery. So you think that, hypothetically, there could be a bank account into which all the bribe money from the first three years was put? We know the money went to Technodyne. Technodyne then sent it to India, banks in India. Banks in India then sent portions of it back to Belmont and all through wire transfers. The government has all of this. We told the government, give us the records. We'll calculate how much money pre and post. We will look at the tracing. We don't have the records, obviously, but we set that. We set that in writing. We don't have it. So to say that our pleadings don't allege tracing is incorrect. If you look at the paragraphs I cited, we say this. The money being— It's kind of a conclusory allegation, though. I mean, to trace money requires something more than that. You have a hope of establishing that, I suppose, is what you're saying. No, Judge, it's not a conclusory allegation. I can plead generally. I can plead generally, and I plead generally that the money went from Technodyne, you know, in a linear fashion to Belmont and all. I've pled that. But I have the right now to get discovery and go and prove it. That's one thing. The other tracing is the bribe money belongs to SIC at the moment the kickbacks are paid. But wait, wait a sec. Why—you cite California law. And New York law. And you cite general—you made a reference to common law. We cite both California— But at the moment the bribe is paid, why isn't that proceeds of an offense as to which the government has prior right? That goes to what Willis said, is they hold it in constructive trust. Willis was something else altogether, in my view. Willis was bank money that was then embezzled. It was clearly bank money and used to purchase something. That's kind of the prototypical tracing operation. Here, that's not so. Ms. Pollard, would you agree for a moment, regardless of what needs to be pled, that what you would have to prove in terms of tracing is not only to trace some money—I mean, we all know that money went into Bell's hands that are bribes, right? And those are proceeds of this crime. And they, in your view, belong—the 2003 to 2006 money belongs to SAIC. But don't you further—wouldn't you further have to prove that Bell did not spend those bribes on consumables from 2003 to 2006 so that you'd have to trace that some of that money is still present in the assets that are now being forfeited? Yes, we'd have to trace it. But we also, going back to the initial admission, where the government and Bell have said that assets were fighting over are the proceeds or traceable to the proceeds? Of all of his crimes, of some of his crimes. So if they're traceable to the crimes that take place from 2006 thereafter, then SAIC doesn't have any interest in that because SAIC is profiting from all of that. The 2003 to 2006 that you're hanging your hat on, and so wouldn't you have to establish ultimately—and again, I'm putting aside what would need to be pled to get you into that—but assuming that you've pled enough, what you'd have to prove is that these assets that are being forfeited are traceable to pre-2006 bribes to Bell. On the hypothetical that you have laid out, I believe that is correct. I don't necessarily—I'm hearing it for the first time, so I'm not— This is why you're still so interested in 2006 to 2009? Am I now understanding that argument? Well, that— That may be relevant because if there is some reason to think that the fraud against the city from which SAIC profits doesn't start until 2009 or 2010 or 2011, then you've got more room to play to trace—I'm not sure how you would do that, but— Yes, absolutely. But my opposition is even the funds that came after the fraud in the city began, the property interest that we have is superior to Bell's, and that is the issue. And Willis addresses that. I was trying to find the quote, but I can't find it. But if we possibly have an interest that's superior to Bell's in money that is being paid to Bell that is then being billed by SAIC to the city, so the city is the one who's paying the money that covers those bribes, not SAIC. Under traditional property law principles— And under the Easterbrook approach. And under the Easterbrook approach, under traditional property law principles, the money that the city pays to SAIC, even if it was— No, that's because he's appropriating a corporate opportunity. If I take a bribe, if I take a bribe to send business to somebody on behalf of my employer, that money presumably is money that the briber would have been willing to pay to the company, and therefore that money belongs to the company. But if I'm taking bribes that are then billed through by the company to somebody else, what corporate opportunity am I appropriating? The company is getting the benefit of whatever money is taken from Technodyne. Well, bear this in mind. The company also has a responsibility, as it was that the government required it, to pay back the city that money. So what you're saying is that, okay, because some of this money was padded and billed, that SAIC has no property interest in that, but SAIC clearly had an obligation, in the government's view, to make restitution to the city in the amount of $323 million. They're engaged in the fraud. If I, on behalf of the company, take money from whatever source, and I skim off some of it, but all of that money is actually being paid by the city, my employer is, I'm acting on behalf of the employer, they're getting a cut of everything that I take, because that money is being passed through to the city. Presumably, if it's any kind of cost plus, they're getting a profit on top of it. That's why they make so much money out of this. What am I appropriating from the company? You're appropriating the company, property of the company. The fact that there is a separate fraud against the city does not undercut the fact that there was a fraud against SAIC for which there's a recognizable loss. We cite the cases in our mandamus brief that if we had a right to the money, we suffered a loss. That applies as well on the forfeiture side. So you're saying that a company whose senior employees defraud the city of New York is entitled to appropriate all the money that gets paid to the city of New York because this was, or at least whatever portion of it, went to the official himself of the company, the executive himself. They're entitled to take that money back from that employee to help fund the money that they're paying back to the city. That doesn't make any sense to me. Well, first of all, it makes sense to your teaching book. I don't always agree with him, so that's a claim that should make sense. But he's a highly respected jurist, as we all know. Tell me what the point of it is. Okay, there are two points here. The issues with respect to the petition turns on property rights. Who has a superior property interest? And under subtle principles of property law, SIC held title to the money from the city, whether it was pre or post the fraud beginning on the city. That money was then wrongfully taken by... Excuse me, excuse me. You said SIC had title to the property to the city? I didn't understand. I apologize, Your Honor. When the city paid SIC, whether it was before or after the fraud on the city started, under the law, title to that money passed to SIC. It owned it. Technodyne, Bell, Denault, Maser then defrauded SIC in making inflated payments to Technodyne, which Technodyne then shared with three main defendants we're talking about. SIC's property rights continue. What it has to do vis-a-vis the city is a separate issue. So in looking at purely property interest, when Bell took possession of that money, we made two arguments. The first is the tracing money. We traced it all the way back. The second, under New York law, California law, the payment of a bribe or a kickback to an employee becomes the property of the employer. Let me understand what you're saying. I had always understood your claim to be that you have... And when I say you, I mean SIC and therefore federal as subrogate. Whatever. Subrogate. Subrogate. Has a right to money that was paid in the 2003 to 2006 period. What I hear you saying now is something broader, that any money that was skimmed off by Bell or, well, or Denault, but Denault's not an issue here, I guess. Any money that was skimmed off by Bell, even during the period when SAIC was passing those costs along to the city, that they have a constructive trust on that too. That's what we argue in our papers. And that's what the law says, Your Honor. Because we have a property interest in that money. Your point has to do with... You used, you know, taking corporate opportunity. Yes, that is there. But the property interest is in the money. Who owns the money? What I'm saying about the corporate opportunity is, that's why we say the money belongs to the company. It belongs to the company because the money that is going to the bribe taker is money that should have gone to the company. If the purchasing agent says, I hear you're willing to pay $10 to accept $10 for this thing, a buy on behalf of the company, I tell you what, I'll make a contract with you that you only have to pay $5 to my boss, and you pay $4 to me and you'll make out and I'll make out and we'll all be happy. That's money that should have gone to the company. But that seems to me a rather different scenario than the scenario in which the official of the company is saying to the outside contractor, uh, listen, my boss is fine with this because anything that, my company is fine with this because anything that you pay me, anything that we pay you, all of it is going to be reimbursed plus a profit from New York City. So what am I taking from the company? Not anything. Well, I quarrel with the breadth of your hypo. Uh, Danald had a significant position. He was not a senior officer in this court. I don't believe he was an actual appointed or elected officer at all. Did he have a senior position? Absolutely. And one of the things that we argue that was picked up in parsing the statement of responsibility is, you know, there's a difference in our view between accepting responsibility for the misconduct of your employees and the corporation itself being in essence, a criminal enterprise as a corporation. It's not a criminal enterprise. It's a criminal. That's what it means to be, uh, liable for the crimes of your employees. But there's a difference. For example, the government lies on the Wellcraft case, the Wellcraft case, you had the senior employer, the senior officers saying, we are going to conspire to make money for this corporation. The senior people. That's not this case. And that's a distinction. You have to have an officer as opposed to someone in charge of a project that turned out to be, you know, $600 million. No, I'm not. No, no, no. What I'm trying, what Judge Lynch has said several times is that senior people, the senior people at SAIC were responsible for this. And I was taking issue with that and saying, yes, he had a very responsible job. You know, no doubt about that. But he was not part of the senior management. I'm trying to draw a distinction in getting, in getting, getting to answer this question about property interest. I'm saying that SAIC could have been convicted of a crime on the allegation that Denault did these things, whether they're negligent, whether they were not even negligent, but just somehow he was so good at covering up what he was covering his tracks, that they didn't know, senior people didn't know about it. That's, it may not be a good rule, but that's the federal rule for when a company is criminally liable. They could be convicted on respondent superior liability. I do not believe they could be convicted on turning a blind eye. The Supreme Court was a global. Yeah, but what difference does it make if they're convicted of a crime, then why do they have any claim to restitution? That's kind of the hard part. But that, that's different than the forfeiture issue. Yeah, I understand that, but that, that, that brings me, that brings, now I want to get back to your property law question, but that brings me to our OGK area, this court's opinion OGK area, where the court said that if you're going to be disentitled, you have to be a co-conspirator in the offense of conviction. The offense of conviction that we are arguing about with respect to restitution has counts two, three, and four, all of which SAIC is the victim. And I have that on page 15 of the Mandamus petition brief, where we point out the government conceives that it's a victim of those crimes. So Judge Daniels never touched that issue. He never touched that case. Sincere word of Bob. Let me ask you to go to the end. Assume, arguendo, that D-5 doesn't apply. I'm sorry, assume, arguendo? Assume, arguendo, that this subsection D-5 that we were parsing a little while ago doesn't apply. What is the statutory framework upon, that you think you're entitled to proceed in the district court? Are you talking about the petition, or are you talking about restitution? Both. Statutory framework for the petition is section 853N. It lays out, you know, who can assert superior interest and how you go about doing it. The statutory framework for... Your position is you're entitled to a hearing and a... We're entitled to a hearing, and we are the lawful representative. Turner never reached that issue as to what is or is not a lawful representative, but... Lawful representative only comes up on restitution, doesn't it? Yes, only comes up on restitution. It's a standing issue. You know, Turner never reached that issue, and under the plain reading of those terms, lawful representative, if you look at that letter that SAIC wrote to Judge Daniels, saying that it had assigned all of its rights to control the recovery to federal, we are a lawful representative just looking at that letter alone, you know, on that. It doesn't have to be that we're pursuing SAIC's interest. In the broader sense, we can proceed against whatever we wish regarding SAIC's interest. And SAIC, for whatever reason, that it decided, I presume it probably, you know, respects and loves the government, but I think it's had enough of fighting with the government. It decided it didn't want to proceed what it may have been entitled to. But we have those rights, and we are entitled to them. And particularly in light of what I said earlier about you have to be careful about, you know, how you rule because it's going to affect, you know, the insurance carrier's coverage. Now, if I can just wrap up, Judge, you know, I want to get back to the property interests with Judge Lynch. You're right, theoretically, we're all talking about misappropriation of a corporate opportunity. But if you look at the cases, the cases speak to, in essence, the conversion of property that the bribes paid, that the payouts money paid belong to the corporation. That's the property interest. And tying it back to Willis, and I was trying to find the quote, but Your Honor, some children will read it, where Willis and Willis, they said that, that's the starting point. What is the relationship between the defendant and the person claiming superior title? Who has the superior interest that's between them? And then you look to the government's interest. So looking at the interest, yes, we can claim the entire amount. Do we get to keep the entire amount if there's a fraud against the city for which you're responsible? Of course not. And Judge Easterbrook said that. And one of the things about going down and trying to parse, you know, are you a victim? Are you not a victim? Who gets what? You get into a quagmire. And just to follow up, when you say, do you get to keep it, do you mean that you get it in this proceeding from the government, and then the city has to sue you for it? Yeah, well, well. What does that mean in practical terms? In practical terms, it means this. And I use Judge Easterbrook's framework. SAIC is the direct victim with respect to the three crimes against it. The 2003 to 2006. Yeah, well, however you want to parse it. But I'm just focusing on the three crimes. The third crime being the Travel Act, in which commercial bribery is the predicate offense. So those are the three crimes in which we are the victims. We are entitled to restitution. We being SAIC. SAIC. SAIC is the victim. The only victim on those three counts. So SAIC gets the money that was paid to its faithless employees. Now, does the city have a claim against SAIC for something? Yes, absolutely. Yeah, and as Judge Easterbrook said, those should be sorted out through the normal application of property and contract law. Except they haven't been here because the city has been made whole vis-a-vis the government. And that's a very good point. It's been made whole. No, not vis-a-vis the government. Vis-a-vis the SAIC. The good offices of the government. The government forced SAIC to pay back the city. They paid the government a half a billion dollars to stay in business. $323 million went to the city. Because SAIC went to trial and got convicted. We all know what happened. But what happened to the rest of the money? The money that DeNalt got. The money that Mazur got. The money that Beall gets. The government wants to put all of that money in its pocket. And who's left holding the bag? SAIC. Who was a victim? And in your opinion, at least with respect to some of that money. In my opinion, with respect to all of the money. Because if you look at, if the government did a guidelines calculation on the loss from the honor services fraud, it's not going to limit that money to what was paid prior to the fraud on the city. They are going to do a loss calculation of all the money that Beall got, all the money that DeNalt got, all the money that Mazur got. Some $45 million. So, and saying, well, just because the city, you know, indirectly funded some of these payoffs doesn't mean that SAIC did not suffer a direct approximate loss from what was unlawfully taken from it. And I thank you for all the time. Thank you very much. Thank you. We'll take the matter under advisement. That concludes our oral argument calendar today. We have two other matters on submission. Thank you, Your Honor. Thanks very much.